RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbrb.com, tma@lnbrb.com
Attorneys for Chapter 11 Debtor and Debtor in Possession

DAREN R. BRINKMAN (SBN 158698)
LAURA PORTILLO (SBN 186813)
BRINKMAN PORTILLO RONK, PC
4333 Park Terrace Drive, Suite 205
Westlake, CA 91361
Telephone: (818) 597-2992
Facsimile: (818) 597-2998
Attorneys for the Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:09-bk-19722-ES |
| LIFEMASTERS SUPPORTED SELFCARE, INC., | Chapter 11 |
| Debtor. | **JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
| | Plan Confirmation Hearing: |
| | Date:  [To Be Scheduled]<br>Time:  [To Be Scheduled]<br>Place:  Courtroom "5A"<br>        411 West Fourth Street<br>        Santa Ana, CA 92701 |

1

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION .................................................................................................2

II.  SUMMARY OF THIS PLAN OF REORGANIZATION ...................................3

A.  What Creditors and Interest Holders Will Receive Under This Plan .........................3

B.  Unclassified Claims ...............................................................................................3

    1.  Administrative Expenses ................................................................................3
    2.  Priority Tax Claims .......................................................................................6

C.  Classified Claims and Interests ...............................................................................8

    1.  Classes of Secured Claims..............................................................................8
    2.  Classes of Priority Unsecured Claims ...........................................................12
    3.  Class of General Unsecured Claims ..............................................................13
    4.  Class of Interest Holders ...............................................................................14

D.  Means of Effectuating this Plan and Implementation of this Plan ...........................16

    1.  Funding for this Plan ....................................................................................16
    2.  Disbursing Agent..........................................................................................16
    3.  Objections to Claims.....................................................................................16
    4.  Investigation and Prosecution of Claims and Avoidance Actions ....................17
    5.  Payment of Professional Fees and Expenses Incurred after the
       Effective Date ..............................................................................................17
    6.  Post-Confirmation Administration of the Reorganized Debtor........................18
    7.  Distributions to be Made Pursuant to this Plan ..............................................19
    8.  Exculpations and Releases ............................................................................20
    9.  Injunctions ...................................................................................................20
    10. Dissolution of the Committee and Formation of the Post-Confirmation
        Committee and the Role of the Post-Confirmation Committee ........................21

E.  Risk Factors .........................................................................................................22

F.  Other Provisions of this Plan .................................................................................23

    1.  Executory Contracts and Unexpired Leases....................................................23

       a) Assumptions ...........................................................................................23
       b) Rejections ..............................................................................................23

i

2. Changes in Rates Subject to Regulatory Commission Approval. ........................23
3. Retention of Jurisdiction.................................................................................23

G. Tax Consequences of Plan.................................................................................25

III.  EFFECT OF CONFIRMATION OF PLAN ..................................................................26

A. No Discharge ......................................................................................................26

B. Revesting of Property in the Reorganized Debtor.............................................26

C. Post-Confirmation Status Report.......................................................................26

D. Post-Confirmation Conversion/Dismissal ........................................................26

E. Payment of United States Trustee Fees .............................................................27

F. Final Decree........................................................................................................28

ii

## I.   INTRODUCTION

LifeMasters Supported SelfCare, Inc. (the "Debtor"), the debtor and debtor in possession in the above-referenced case, commenced its bankruptcy case by filing a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") on September 14, 2009 (the "Petition Date"). The Debtor is operating its bankruptcy estate and managing its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. A plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling the assets of its estate, or a combination of both. The Debtor and the Official Committee of Unsecured Creditors (the "Committee") are the parties who are jointly proposing this Joint Chapter 11 Plan of Reorganization (the "Plan").

This Plan is a liquidating plan. In other words, the Debtor and the Committee (collectively referred to herein as the "Plan Proponents") seek to accomplish payments to creditors under this Plan by liquidating all of the Debtor's remaining assets, if any, and distributing the proceeds from the liquidation of those assets coupled with the proceeds from the prior sale of substantially all of the Debtor's assets and the Debtor's remaining cash on hand in accordance with the priorities set forth in the Bankruptcy Code.

All defined terms used in this Plan which are not defined in this Plan shall have the same definitions set forth in the concurrently filed Disclosure Statement describing this Plan.

The effective date of this Plan (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Court order confirming this Plan (the "Plan Confirmation Order") when and provided that all of the following conditions to the

2

effectiveness of this Plan have been satisfied or waived by the Plan Proponents: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan shall have been executed and delivered by all parties to such documents, instruments and agreements. The Debtor following the Effective Date shall be referred to as the "Reorganized Debtor". The Plan Proponents shall, in their sole and absolute discretion, have the right to waive any or all of the conditions set forth above to the effectiveness of this Plan. If the Plan Proponents do so and accelerate the effectiveness of this Plan, the Plan Proponents shall file a notice with the Court identifying the Effective Date of this Plan.

## II. SUMMARY OF THIS PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under This Plan

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority. This Plan states whether each class of claims or interests is impaired or unimpaired. This Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Plan Proponents have <u>not</u> placed the following claims in a class.

#### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy

Code requires that all administrative claims be paid on the Effective Date, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's §507(a)(2) administrative claims and their treatment under this Plan.[1]

**<u>NON-PROFESSIONAL</u>**

| <u>Name</u> | <u>Alleged Amount</u> | <u>Treatment</u> |
|---|---|---|
| Callahan-Pentz Properties | $9,510.74 – alleged post-petition rent due and owing | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses. |
| Nice Systems | $44,984.38 – alleged post-petition amounts due and owing for goods and services | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses. |
| **TOTAL ALLEGED** | **$54,495.54 est.** | |

**<u>PROFESSIONAL</u>**

| <u>Name</u> | <u>Estimated Amount</u> | <u>Treatment</u> |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date out of the Estate Funds. |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date out of the Estate Funds. |
| Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel to the Debtor | $350,000 est. in excess of pre-petition retainer and post-petition payments made.

This estimate of fees and expenses assumes that the | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses. |

---

[1] The chart below is for informational purposes and are not an admission as to the validity of any particular claim.

4

| | | |
|---|---|---|
| | estate has to go to trial on the complaint against the Defendants. The actual fees and expenses will me lower if there is a settlement with the Defendants. | |
| Brinkman Portillo Ronk, PC, counsel to the Committee | $_____ est. in excess of post-petition payments made. | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses. |
| Alvarez & Marsal Healthcare Industry Group, LLC, crisis managers to the Debtor | $300,000 est. in excess of pre-petition and post-petition payments made. | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses. |
| Patton Boggs LLP, special healthcare counsel to the Debtor | $495,000 est. in excess of pre-petition and post-petition payments made.<br><br>This estimate of fees and expenses assumes that the estate has to go to trial on the complaint against the Defendants. The actual fees and expenses will me substantially lower if there is a settlement with the Defendants. | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses. |
| Lucy W. Reckseit, general counsel to the Debtor | $0 – previously paid in full pursuant to final fee application and order thereon. | N/A |
| Tatum, LLC | $57,380.05 for post-petition services rendered. | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such administrative claim. |
| Deloitte, LLP, proposed accountants to the Debtor | $35,000 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such administrative claim. |
| **TOTAL** | $_____ est. | |

5

Bankruptcy Court Approval of Fees Required:

The Bankruptcy Court must approve all professional fees and expenses and administrative claims listed in this chart before they may be paid, as well as approving any previously allowed fees and expenses sought by professionals pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Guidelines of the OUST. For all fees except Clerk's Office fees and the fees owing to the OUST, the professional in question must file and serve a properly noticed fee application, and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under this Plan.

The administrative claim amounts set forth above simply represent the Plan Proponents' best estimate as to the amount of allowed administrative claims estimated to be incurred by professionals prior to the Effective Date of this Plan and that will be paid on the Effective Date or as soon as they are allowed and to the extent allowed by the Bankruptcy Court. The actual administrative claims may be higher or lower. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. By voting to accept this Plan, creditors also understand that the final amount of allowed fees and expenses of the professionals employed in this case may be higher or lower than the figures set forth above, which again are just estimates.

## 2. Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash (i) of a total value, as of the Effective Date of this

Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for under this Plan.

The following charts list all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under this Plan:[2]

| Claimant | Alleged Amount | Treatment |
|----------|----------------|-----------|
| Bexar County | Scheduled - $45,423.67 (Filed Claim No. 45 asserting a secured claim in the amount of $45,423.67) | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| Franchise Tax Board | Claim No. 84 - $1,669.97 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| New Mexico Taxation & Revenue Department | Claim No. 91 - $217,482.31 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| Department of Taxation | Claim No. 51 - $12,601.99 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| Oklahoma Tax Commission | Claim No. 30 - $25,312.60 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| Sacramento County Tax Collector | Scheduled - $30,577.46 Claim No. 27 - $30,647.49 | Paid in full out of the Estate Funds on the later of the Effective Date and the |

[2] The chart below is for informational purposes and are not an admission as to the validity of any particular claim.

7

| Claimant | Alleged Amount | Treatment |
|---|---|---|
| | | the Bankruptcy Court enters an order allowing such priority tax claim. |
| State Board of Equalization | Claim No. 58 - $998.00 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| Texas Comptroller of Public Accounts | Claim No. 83 - $6,810.83 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| Treasurer Bernalillo County | Claim No. 33 - $8,328.88 | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority tax claim. |
| **TOTAL ALLEGED** | $349,275.74 | |

### C.  Classified Claims and Interests

#### 1.  Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following charts list all of the Debtor's alleged secured claims and their treatment under this Plan:[3]

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1-A | Alleged Secured Claim of: Iron Mountain Information Management, Inc.  Collateral: 329 boxes of | N | Y  Impaired; allowed claim in this class is entitled to vote on this Plan. | Any allowed secured claim paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such secured claim; any allowed general |

---

[3] The chart below is for informational purposes and are not an admission as to the validity of any particular claim.

8

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | documents held in storage<br><br>Value of Collateral: Unknown.<br><br>Priority of Security Interest: Unknown, the Debtor disputes any alleged security interest of creditor.<br><br>Alleged Amount of Claim: $329.00 secured $3,608.61 general unsecured | | | unsecured claim to be paid in accordance with other allowed Class 3 general unsecured claims. |
| 1-B | Alleged Secured Claim of: Consona Corporation<br><br>Collateral: Deposit for lease of real property<br><br>Value of Collateral: $12,200.85<br><br>Priority of Security Interest: First<br><br>Alleged Amount of Claim: $12,200.85 secured $137,206.05 general unsecured | N | Y<br><br>Impaired; allowed claim in this class is entitled to vote on this Plan. | Any allowed secured claim paid in full by setoff against deposit; any allowed general unsecured claim to be paid in accordance with other allowed Class 3 general unsecured claims. |
| 1-C | Alleged Secured Claim of: Canon Financial Services, Inc. | N | Y<br><br>Impaired; allowed claim in this class is | Any allowed secured claim paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy |

9

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | Collateral: Office Equipment<br><br>Value of Collateral: Unknown.<br><br>Priority of Security Interest: Unknown, the Debtor disputes any alleged security interest of creditor, as (1) the underlying agreement between the parties created a leasing relationship, (2) the underlying lease may have been assumed and assigned to StayWell, and/or (3) the underlying lease may have been rejected and the equipment returned to the creditor.<br><br>Alleged Amount of Claim: $23,064.68 secured $49,649.21 general unsecured | | entitled to vote on this Plan. | Court enters an order allowing such secured claim; any allowed general unsecured claim to be paid in accordance with other allowed Class 3 general unsecured claims. |
| 1-D | Alleged Secured Claim of: Bexar County<br><br>Collateral: Unknown<br><br>Value of Collateral: Unknown<br><br>Priority of Security Interest: | N | Y<br><br>Impaired; allowed claim in this class is entitled to vote on this Plan. | Any allowed secured claim paid in full by setoff against deposit; any allowed general unsecured claim to be paid in accordance with other allowed Class 3 general unsecured claims. |

10

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | Unknown<br><br>Alleged Amount of Claim:<br>$45,423.67 secured | | | |
| 1-E | Alleged Secured Claim of:<br>De Lage Landen Financial Services, Inc.<br><br>Collateral:<br>Office Equipment<br><br>Value of Collateral:<br>Unknown.<br><br>Priority of Security Interest:<br>Unknown, the Debtor disputes any alleged security interest of creditor, as (1) the underlying agreement between the parties created a leasing relationship, (2) the underlying lease may have been assumed and assigned to StayWell, and/or (3) the underlying lease may have been rejected and the equipment returned to the creditor.<br><br>Alleged Amount of Claim:<br>$103,543.18 secured | N | Y<br><br>Impaired; allowed claim in this class is entitled to vote on this Plan. | Any allowed secured claim paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such secured claim; any allowed general unsecured claim to be paid in accordance with other allowed Class 3 general unsecured claims. |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a) (1), (4), (5), (6) and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows:  The Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The following chart lists the class containing the Debtor's (non-tax) priority claims and their treatment under this Plan:

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Priority claims pursuant to 11 U.S.C. Sections 507(a)(1), (4), (5), (6), (7) (the "Non-Tax Priority Claims").<br><br>Estimated Amount of Non-Tax Priority Claims:<br>Based on (1) amendments to the Debtor's Schedule E of priority claims filed with the Court and to be filed with the Court, and (2) an analysis of proofs of claim filed with the Court, the Debtor estimates that the maximum potential amount of Non-Tax Priority Claims is approximately $21,900 | N | Y<br><br>Impaired; allowed claims in this class are entitled to vote on this Plan. | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such priority claims. |

3.    **Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (see Exhibit "1" to the Disclosure Statement for detailed information about each claim; Exhibit "1" is for informational purposes and is not an admission as to the validity of any particular claim.):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | All general unsecured claims<br><br>The Debtor included a total of $128,670.92 of non-priority unsecured claims in its bankruptcy schedules. An additional approximately $118,865.04 of non-priority unsecured claims have been asserted against the Debtor in filed proofs of claim, and claims marked as "unknown" have also been asserted against the Debtor in filed proofs of claim.<br><br>Excluding any claim in favor of CMS, the Debtor estimates that there will likely be a total of approximately $4.5 million of allowed non-priority unsecured claims. However, these | Y<br><br>Impaired; allowed claims in this class are entitled to vote on this Plan. | All Estate Funds remaining after (i) all allowed administrative claims, all allowed priority tax claims, and all allowed priority (non-tax) claims have been paid in full, and (ii) the Reserve (defined below) has been established and funded will be distributed to holders of Class 3 allowed claims on a pro rata basis based upon the allowed amount of their Class 3 claims.<br><br>The Debtor estimates that holders of Class 3 allowed claims will receive a distribution of 8.9% if the $108 million in claims asserted by CMS are allowed in full and will receive a distribution of 100% if the claims asserted by CMS are allowed in the amount of approximately $5.5 million or less.<br><br>The goal of the Plan Proponents is to provide for holders of Class 3 allowed claims to be paid 100% of the amount of their class 2 allowed claims. If sufficient Estate Funds are available, holders of Class 3 allowed claims will also receive post-petition interest, at a rate not to exceed the federal post-judgment interest rate established by 28 U.S.C. § 1961(a).<br><br>The distribution to holders of Class 3 |

13

| | figures are just estimates. The actual final amount of allowed non-priority unsecured claims may be higher or lower than these figures, and Class 3 claim holders voting on this Plan should not rely on these figures in making their voting decision. Also, to the extent any or all of the approximately $108 million in claims asserted by CMS is ultimately allowed by the Court, that would have a significant impact on the ultimate recovery for other Class 3 claim holders. | | allowed claims shall be made within thirty days following the later of (i) the entry of a Bankruptcy Court order resolving the final remaining disputed claim, and (ii) the entry of a Bankruptcy Court order allowing the fees and expenses of the professionals who were employed in this case. The Debtor estimates that the distribution to holders of Class 3 allowed claims will be made by around August 31, 2010, unless the lawsuit against CMS has not been resolved by that time.

This Plan provides that the Reorganized Debtor, in consultation with the Committee, may, in its discretion, make an interim or partial distribution to holders of allowed Class 3 claims, with an appropriate reserve on account of disputed claims, if doing so appears to be in the best interests of creditors. This could occur, for example, if the lawsuit against CMS has not been resolved by the Plan Effective Date.

The estimated percentage distribution set forth above is just an estimate. The Debtor will not know the actual percentage distribution until the claims objection process has been completed and final applications for approval of the fees and expenses of the professionals employed in this case have been ruled upon. By voting to accept this Plan, Class 3 claim holders are acknowledging that their actual percentage recovery may be higher or lower than as estimated above. |
|---|---|---|---|

### 4.    Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. Since the Debtor is a corporation, the interest holders are the owners of the stock of the Debtor. The following chart identifies this Plan's treatment of the Debtor's interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | Equity interests in the Debtor. | Y<br><br>Impaired; holders of Class 4 interests are entitled to vote on this Plan. | If there are any Estate Funds remaining after all allowed administrative claims have been paid in full, all allowed priority tax claims have been paid in full, all allowed priority (non-tax) claims have been paid in full, all allowed Class 3 claims have been paid in full, including post-petition interest up to the federal post-judgment interest rate, all post-confirmation expenses of the estate have been paid in full, and the Reserve has been established and funded, then the remaining balance of the Estate Funds will be distributed to holders of Class 4 interests on a <u>pro</u> <u>rata</u> basis based upon the amount and priority of their Class 4 interests.<br><br>Based upon the amount of the CMS claim and the amount of Estate Funds, the only way that there will be sufficient money available to make a distribution to the holders of Class 4 interests is if the claim asserted by CMS is allowed in an amount of less than approximately $5.5 million and/or if the Defendants are ultimately forced to pay money back to the Debtor's estate. This will not be known until the lawsuit against the Defendants has been concluded. |

**D.    Means of Effectuating this Plan and Implementation of this Plan**

**1.    Funding for this Plan**

This Plan will be funded entirely by the Estate Funds and any recovery of funds obtained from the pursuit of any avoidance causes of action, including the lawsuit against Defendants.

**2.    Disbursing Agent**

The Reorganized Debtor shall serve as the disbursing agent for purposes of making all distributions under this Plan. The Reorganized Debtor will not be paid any disbursement agent fee for making such distributions.

**3.    Objections to Claims**

The claims bar date in this case was January 22, 2010. Attached as Exhibit "1" to the Disclosure Statement is a claims chart, which identifies all of the Debtor's scheduled claims and all proofs of claim which have been filed against the Debtor. The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims which are inconsistent with the Debtor's books and records unless the Debtor deems the inconsistency to be insignificant, except for any claims filed by any insiders of the Debtor, which will be analyzed by the Committee and objected to by the Committee if the Committee disagrees with such claims. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may, upon required notice and motion, estimate any contingent or unliquidated disputed claim for purposes of confirmation of this Plan. The Debtor, the Reorganized Debtor, and the Committee, as the case may be, will have the authority to file any objections to claims following the confirmation of this Plan, and the Bankruptcy Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, the Committee and this case to resolve such objections to claims following the confirmation of this Plan. Nothing contained in this Plan shall constitute a waiver or release by

the Debtor, the Reorganized Debtor or the Committee of any rights of setoff or recoupment, or of any defense, the Debtor, the Reorganized Debtor or the Committee may have with respect to any claim.

### 4.    Investigation and Prosecution of Claims and Avoidance Actions

If as a result of the lawsuit against the Defendants holders of Class 3 allowed claims are paid in full, then there would be no purpose for pursuing any other avoidance causes of action. If the holders of Class 3 allowed claims are ultimately not paid in full, the Debtor and the Committee will collectively analyze all payments made within ninety-days prior to the Petition Date for non-insiders, and the Committee will analyze all payments made within one-year prior to the Petition Date for insiders, to determine whether any payments made are avoidable as preferences. If appropriate to do so, the Debtor and/or the Committee will prosecute such avoidance causes of action for the benefit of holders of Class 3 allowed claims. Attached as Exhibit "2" to the Disclosure Statement is a chart which identifies all payments made within ninety-days prior to the Petition Date to non-insiders and one-year prior to the Petition Date to insiders and which could therefore possibly be subject to avoidance as preferential transfers. The Debtor also reserves the right to investigate and pursue any fraudulent transfer or other avoidance causes of action arising under Chapter 5 of the Bankruptcy Code as it deems appropriate.

### 5.    Payment of Professional Fees and Expenses Incurred after the Effective Date

On the Effective Date, a reserve (the "Reserve") will be established out of the Estate Funds to pay the fees and expenses of counsel to the Reorganized Debtor and to the Committee which are estimated to be incurred after the Effective Date, including to address post-Effective Date administrative matters, to close out the Debtor's Chapter 11 case through the entry of a

17

final decree, to pay any post-confirmation fees owing to the OUST, to file final tax returns, and to effectuate a corporate dissolution of the Debtor. The Reorganized Debtor shall have the authority to pay all such fees and expenses out of the Reserve without any further order of the Bankruptcy Court. The amount of the Reserve will depend primarily upon the status of the lawsuit against Defendants at the time of Plan confirmation. Prior to the Plan confirmation hearing, the Debtor and the Committee will file a notice with the Court identifying the amount of the Reserve.

####    6.    Post-Confirmation Administration of the Reorganized Debtor

Following the Effective Date, A&M will continue to serve as the primary representative of the Reorganized Debtor. Commencing on June 1, 2010 and continuing through the closing of this estate, A&M will be compensated at an hourly rate basis in accordance with the hourly billing rates identified in Exhibit "3" to the Disclosure Statement with a $60,000 monthly cap on fees, provided, however, that any unused portion under such cap shall be applied to increase the cap for prior or future months where A&M's fees exceeded or exceed the cap, in which case, A&M shall be entitled to recover additional fees in an amount up to the unused cap. In addition to monitoring and assisting in the implementation of this Plan and assisting the Reorganized Debtor in any other necessary matters, after the Effective Date, A&M, at the direction of the Committee, will be authorized to cause the Reorganized Debtor to (i) analyze and prosecute avoidance and other causes of action; (ii) continue with the prosecution of the lawsuit against the Defendants; (iii) prepare and file its post-confirmation reports with the OUST and to pay any post-confirmation fees owing to the OUST; (iv) if necessary, employ special corporate counsel to effectuate a corporate dissolution of the Debtor; and (v) pay all professional fees and expenses incurred after the Effective Date by counsel to the Reorganized Debtor, counsel to the Post-Confirmation Committee, and any other professionals retained by

the estate.

### 7.    Distributions to be Made Pursuant to this Plan

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to this Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1007, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  The Plan Proponents shall have the right to elect to make an interim distribution to holders of Class 3 allowed claims if the existence of one or more disputed Class 3 claims is preventing a timely distribution from being made to the holders of Class 3 allowed claims.  In the event of such an interim distribution, all disputed Class 3 claims will be treated as Class 3 allowed claims in the amounts asserted by the Class 3 claimants for purposes of computing the interim distribution to be made to the holders of Class 3 allowed claims.   It is possible that the Reorganized Debtor may make an interim distribution followed by a final distribution.   This is because there may be excess funds available in the Reserve to be distributed to creditors, after the administrative aspects of the chapter 11 case have been completed or are near completion. This may also occur if an interim distribution to creditors is made pending the resolution of (and appropriate reserve for) a number of large disputed claims.

If the remaining funds in the Reserve is of such a small amount as to make it impracticable to make a further distribution to holders of allowed Class 3 claims or holders of Class 4 equity interests, then in the discretion of the Reorganized Debtor, after the closing of the Case, such remaining funds in the Reserve may be contributed to the Clerk of the Court.

19

8.    **Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, the Committee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation and implementation of this Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of this Plan, or the consummation and implementation of this Plan and the transactions contemplated therein.

9.    **Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan. Except as provided in this Plan or the Plan Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, the Committee, or their property, members, officers, or directors, agents or representatives, including professionals employed on behalf of the Debtor's estate, on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff,

20

right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan.  By accepting distributions pursuant to this Plan, each holder of an allowed claim receiving distributions pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.

**10.    Dissolution of the Committee and Formation of the Post-Confirmation Committee and the Role of the Post-Confirmation Committee**

On the Effective Date, the Committee will be deemed dissolved and its members will be released and discharged from all further duties and obligations arising from or related to this case.  On the Effective Date, a post-confirmation creditors' committee (the "Post-Confirmation Committee") shall be deemed created provided all three members of the Committee agree to serve as members of the Post-Confirmation Committee.  All references herein to the Committee shall be deemed to include the Post-Confirmation Committee on and after the Effective Date, as the context requires. The Post-Confirmation Committee shall be comprised of all three current members of the Committee.

The Post-Confirmation Committee will have all of the rights and responsibilities of the Committee and as set forth herein and in this Plan.  Among other things, the Post-Confirmation Committee will continue with the prosecution of any objections to the claims of any insiders which were commenced by the Committee prior to the Effective Date but which have not been liquidated to final order by the Effective Date, and the Post-Confirmation Committee shall have the right and standing to commence any objections to the claims of any insiders after the Effective Date which were not commenced by the Committee prior to the Effective Date.  The Bankruptcy Court will retain jurisdiction over the Post-Confirmation Committee and such

21

claim objections for this purpose, regardless of whether such claim objections were commenced prior to or subsequent to the Effective Date.

Similarly, the Post-Confirmation Committee will continue with the prosecution of any causes of action against any insiders which were commenced by the Committee prior to the Effective Date but which have not been liquidated to final order by the Effective Date, and the Post-Confirmation Committee shall have the right and standing to commence any causes of action against any insiders after the Effective Date which were not commenced by the Committee prior to the Effective Date. The Bankruptcy Court will retain jurisdiction over the Post-Confirmation Committee and such causes of action for this purpose, regardless of whether such causes of action were commenced prior to or subsequent to the Effective Date.

Entities who served as professionals to the Committee prior to the Effective Date shall also serve as professionals to the Post-Confirmation Committee and shall be compensated from the Estate Funds for all fees and expenses incurred after the Effective Date without the need for any further order of the Bankruptcy Court on the same terms and conditions as such professionals were employed and compensated prior to the Effective Date. The Post-Confirmation Committee shall be deemed dissolved upon the entry of the Final Decree.

**E.    Risk Factors**

The Plan Proponents do not believe that there is any risk of non-performance of this Plan since this Plan consists of the distribution of the Estate Funds (which already exist) in accordance with the terms of this Plan. The performance of this Plan is therefore not subject to any other variables. The primary unknown at this point is what the outcome of the lawsuit against the Defendants will be which, given the magnitude of the claims asserted by CMS, may have a substantial impact upon the ultimate distribution to be made to holders of Class 3 allowed claims and to holders of Class 4 equity interests if holders of Class 3 allowed claims are ultimately paid in full.

**F.    Other Provisions of this Plan**

**1.    Executory Contracts and Unexpired Leases**

**a)    Assumptions**

The Debtor will not be assuming any executory contracts or unexpired leases under this Plan.

**b)    Rejections**

All of the Debtor's executory contracts and unexpired leases which have not been previously rejected will be deemed rejected on the Effective Date.  THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE DATE OF ENTRY OF THE PLAN CONFIRMATION ORDER.  Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.  To the extent any claims are filed based on the rejection of executory contracts or unexpired leases, such claims shall constitute and be treated as administrative claims to the extent such claims are allowed, if at all, for any post-petition amounts due, and otherwise as class 3 claims.

**2.    Changes in Rates Subject to Regulatory Commission Approval.**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**3.    Retention of Jurisdiction.**

After confirmation of this Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.    to resolve any and all disputes regarding the operation and interpretation

23

of this Plan and the Plan Confirmation Order;

      b.    to determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, the Committee or by other parties in interest with standing to bring such objection or proceeding, including to adjudicate the lawsuit against Defendants to final order;

      c.    to determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

      d.    to construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other Bankruptcy Court order, issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan, the Plan Confirmation Order, and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court;

      e.    to determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

      f.    to determine any request for payment of administrative expenses;

      g.    to determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

      h.    to determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date;

      i.    to determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

      j.    to modify this Plan under Section 1127 of the Bankruptcy Code in order

24

to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

k.    except as otherwise provided in this Plan or the Plan Confirmation Order, to issue injunctions, or to take such other actions or make such other orders, as may be necessary or appropriate to restrain interference with this Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Plan Confirmation Order;

l.    to issue such orders in aid of consummation of this Plan or the Plan Confirmation Order, including approval of distributions under this Plan, notwithstanding any applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

m.    to enter a final decree closing this Chapter 11 case.

### G.    Tax Consequences of Plan.

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THIS PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.    The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.    The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of this Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

The Debtor does not anticipate that confirmation of this Plan will have a significant or material effect on its tax liability.    The Debtor makes no representations regarding the potential tax consequences to creditors or interest holders.

25

## III.    EFFECT OF CONFIRMATION OF PLAN

### A.    No Discharge

Since this is a liquidating plan of reorganization, the Debtor will not be receiving a discharge following confirmation of this Plan pursuant to 11 U.S.C. § 1141.

### B.    Revesting of Property in the Reorganized Debtor

The confirmation of this Plan revests, as of the Effective Date, all of the property of the bankruptcy estates in the Reorganized Debtor. Without limiting the generality of the foregoing, the confirmation of this Plan vests in the Reorganized Debtor, as of the Effective Date, the right to pursue all claims of the estate, including, but not limited to, avoidance actions pursuant to Chapter 5 of the Bankruptcy Code.

### C.    Post-Confirmation Status Report

Within 120 days following the entry of the Plan Confirmation Order, unless a final decree closing the Debtor's Chapter 11 case is first entered, the Reorganized Debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the OUST, the Committee and its counsel, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities until a final decree is entered closing the Debtor's Chapter 11 case, unless otherwise ordered by the Bankruptcy Court.

### D.    Post-Confirmation Conversion/Dismissal

A creditor or any other party in interest may bring a motion to convert or dismiss this case under Section 1112(b) of the Bankruptcy Code after this Plan is confirmed if there is a default in performing this Plan. If the Bankruptcy Court orders this case converted to Chapter 7 after this Plan is confirmed, then all property that had been property of the Chapter 11 estate,

26

and that has not been disbursed pursuant to this Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during this case. The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

### E.    Payment of United States Trustee Fees

The Debtor and the Reorganized Debtor, as the case may be, shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until a final decree is entered closing the Debtor's Chapter 11 case. After the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court and serve on the OUST quarterly financial reports regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) that this case remains open.

/ / /

/ / /

/ / /

## F.    Final Decree

Once the Debtor's estate has been substantially consummated as referred to in 11 U.S.C. § 1101(2), the Debtor, the Reorganized Debtor, or any other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close this case.

Dated:  April 15, 2010                    LEVENE, NEALE, BENDER, RANKIN
                                          & BRILL L.L.P.


                                          By: */s/ Ron Bender*
                                              Ron Bender
                                              Todd M. Arnold
                                              Attorneys for Chapter 11 Debtor
                                              and Debtor in Possession and Co- Plan
                                              Proponent

Dated:  April 15, 2010                    BRINKMAN PORTILLO RONK, PC


                                          By: */s/ Daren R. Brinkman*
                                              Daren R. Brinkman
                                              Laura Portillo
                                              Attorneys for Official Committee of
                                              Unsecured Creditors and
                                              Co-Plan Proponent

28

| In re:<br>LIFEMASTERS SUPPORTED SELFCARE, INC.<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 8:09-bk-19722-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing documents described as **JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 15, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Todd M Arnold    tma@lnbrb.com
- Catherine E Bauer    Catherine.Bauer@usdoj.gov
- Ron Bender    rb@lnbrb.com
- Neil Jon Bloomfiedd    njbloomfield@njblaw.com
- Daren Brinkman    office@brinkmanlaw.com
- Eugene Chang    echang@steinlubin.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Peter J Gurfein    pgurfein@akingump.com
- Jay W Hurst    jay.hurst@oag.state.tx.us, sherri.simpson@oag.state.tx.us
- Gerald P Kennedy    gpk@procopio.com
- Leib M Lerner    leib.lerner@alston.com
- Julie E Oelsner    joelsner@weintraub.com
- Laura J Portillo    office@brinkmanlaw.com
- Kevin C Ronk    Kevin@brinkmanlaw.com
- James R Selth    jim@wsrlaw.net
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- Matthew J Troy    matthew.troy@usdoj.gov
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Wendy M Warren    wwarren@bassberry.com
- Marc J Winthrop    pj@winthropcouchot.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On April 15, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Service by Overnight Mail
The Hon. Erithe A. Smith
United States Bankruptcy Court
411 West Fourth Street
Santa Ana, CA 92701

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**

| In re:<br>LIFEMASTERS SUPPORTED SELFCARE, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 8:09-bk-19722-ES |
| --- | --- |

Served by U.S. Mail
George D. Pillari/Brian Buchanan
Alvarez & Marsal Healthcare
Industry Group, LLC
100 Pine Street, Suite 900
San Francisco, CA 94111

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 15, 2010 | Lourdes Cruz | /s/ Lourdes Cruz |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 9013-3.1